T.C. Memo. 2001-287

UNITED STATES TAX COURT

LEE NELSON SHAW, Applicant <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

VIRGINIA MARIE SWEENEY, Applicant <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 1-01-D, 2-01-D.          Filed October 29, 2001.

<u>Kenneth M. Hart</u>, for applicants.

<u>William A. Heard III</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  These consolidated cases were assigned to
Chief Special Trial Judge Peter J. Panuthos pursuant to Rules 180
and 181 and Interim Rule 183.[1]   The Court agrees with and adopts

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
(continued...)

the opinion of the Chief Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge:  These matters are before the Court on Lee Nelson Shaw's (Mr. Shaw) and Virginia Marie Sweeney's (Mrs. Sweeney) separate applications to perpetuate testimony, filed pursuant to Rule 82.  (For convenience, we will refer to Mr. Shaw and Mrs. Sweeney, collectively, as the applicants.)  The applicants do not have current petitions for redetermination of deficiencies before the Court.

## Background

The applicants are siblings.  Mr. Shaw and Mrs. Sweeney were 71 and 78 years of age, respectively, at the time the applications herein were made.  At the time of filing the applications, Mr. Shaw resided at Vero Beach, Florida, and Mrs. Sweeney resided at Chappaqua, New York.

The applications in these cases state that, in 1951, the applicants, along with their brother, Robert S. Shaw (now deceased), each formed separate trusts.  The trusts named City Bank Farmers Trust Co. (now Citibank) and Marie A. Shaw, the applicants' mother, as trustees.  The applications further state:

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

(1) The applicants formed the trusts at the direction of their father, Leo N. Shaw; (2) the applicants' parents funded the trusts over a 12-year period either by transferring assets directly to the trusts or by transferring assets to the applicants, who in turn transferred the assets to the trusts; and (3) the applicants' mother generally converted income from the trusts to household use.  Although the applicants were named as beneficiaries of their respective trusts, income from the trusts was not made available to the applicants until after their parents died.

Mr. Shaw's trust currently holds assets valued at approximately $5.8 million, and Mrs. Sweeney's trust currently holds assets valued at approximately $4.2 million.  The applicants both have substantial assets in addition to their trusts.

The applicants assert that the value of their respective trusts should not be included in their gross estates for purposes of computing Federal estate taxes.  In particular, the applicants maintain that their parents funded the trusts and the applicants were merely "nominal settlors" with a life estate in the trusts. The applicants are concerned that, after their deaths, respondent will examine their estates' Federal estate tax returns and determine that the value of the trusts should be included

therein.[2]  The applicants further anticipate that their personal representatives will contest respondent's determinations by filing a petition with the Court.  The applicants contend that they are the only living persons with knowledge of the circumstances underlying the creation, funding, and administration of the trusts.

Respondent filed a response in opposition to the applications, arguing in part:  (1) The applicants have failed to show that they expect to be parties to a case cognizable in this Court; and (2) the applicants have failed to show that there is a significant risk that the desired testimony will be lost before trial because (a) there is no evidence that either applicant is suffering from any serious illness, and (b) it is likely that one of the applicants will be available to testify at a Tax Court trial concerning the estate of the first to die.

This matter was called for hearing at the Court's motions session in Washington, D.C.  Counsel for the parties appeared at the hearing and offered argument.

<u>Discussion</u>

Rule 82 provides for the taking of depositions before the

---

[2]  Although the applicants state that they became aware of the trust issue following their brother's death, there is no allegation that respondent issued a notice of deficiency to the Estate of Robert S. Shaw.

commencement of a Tax Court case "to perpetuate testimony or to preserve any document or thing regarding any matter that may be cognizable in this Court".  Rule 82 is derived from rule 27(a) of the Federal Rules of Civil Procedure, and we are guided by judicial interpretations of rule 27 of the Federal Rules of Civil Procedure in the absence of our own precedent.  <u>Reed v. Commissioner</u>, 90 T.C. 698, 700 (1988).

Rule 82 states that an application must include:  (1) The facts showing that the applicant expects to be a party to a case cognizable in this Court but is at present unable to bring it or cause it to be brought; (2) the subject matter of the expected action and the applicant's interest therein; and (3) all matters required to be shown in an application under paragraph (b)(1) of Rule 81 except item (H) thereof.  Rule 81(b)(1), as is relevant here, requires the applicant to show the reason for deposing a person rather than waiting to call the person as a witness at trial and the substance of the testimony that the applicant expects to elicit.  Rule 82 further provides:

> If the Court is satisfied that the perpetuation of the testimony or the preservation of the document or thing may prevent a failure or delay of justice, then it will make an order authorizing the deposition and including such other terms and conditions as it may deem appropriate consistently with these Rules. * * *

The instant applications state that the applicants expect that, after the death of each, their respective estates will be parties to cases cognizable in this Court and that the cases will

concern the question whether the values of their trusts should be included in their gross estates for purposes of computing Federal estate taxes. As indicated, respondent objects to the applications.

It is our view that Rule 82 was not intended to be invoked under the abstract circumstances of these cases. The facts here are clearly distinguishable from those in GlaxoSmithKline Holdings (Americas) Inc. v. Commissioner, 117 T.C. 1 (2001). In GlaxoSmithKline Holdings, the examination of the taxpayer was ongoing. Attempts were made to resolve differences through the Advance Pricing Agreement Program and through the Internal Revenue Service's Office of Appeals. The taxpayer further requested relief from double taxation under the so-called competent authority process. At the time of making the application to perpetuate testimony, the taxpayer anticipated that the competent authority process could be protracted and that it would be 4 or 5 years before the case might proceed to trial. The Court concluded in GlaxoSmithKline Holdings that there was a reasonable expectation that the applicants would be adversaries in an action cognizable in the Court and a significant risk that critical testimony might be lost.

By contrast, the applications in these cases involve the possible estate taxes of persons who are still alive. The only certainty in these cases is that the applicants will die someday.

No one can say for a certainty when their respective deaths will occur.  More importantly, the events that might occur after the death of the applicants are all speculative.  Upon the respective deaths of the applicants, if representatives of each of the estates conclude the estates were subject to estate tax, Federal estate tax returns would be due 9 months after the death of each applicant.  Secs. 6018, 6075.  The Federal estate tax returns might or might not be filed.  Assuming Federal estate tax returns were filed, or were required to be filed, the Internal Revenue Service might examine the returns and/or the estates.  If examined, adjustments might be made, and each respective estate might disagree with proposed adjustments.  At some point, a notice of deficiency to each estate might be issued, and a petition might be filed on behalf of each estate.

Unlike the circumstances in GlaxoSmithKline Holdings, there are far too many contingencies for us to conclude that the respective legal representatives of the applicants will be parties cognizable in this Court.  In Reed v. Commissioner, supra at 701, we emphasized that "The relief provided for by Rule 82 is an extraordinary measure and invoked only to prevent the failure or delay of justice."  See also Masek v. Commissioner, 92 T.C. 814, 815 (1989), supplementing 91 T.C. 1096 (1988).  We are not persuaded on this record that the perpetuation of the applicants'

testimony may prevent a failure or delay of justice.

Accordingly, we will deny the applications.

To reflect the foregoing,

<u>Orders will be entered</u>

<u>denying the applications to</u>

<u>perpetuate testimony</u>.